HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ILLINOIS NATIONAL INSURANCE COMPANY,

  Plaintiff,

  v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; XL INSURANCE AMERICA INC.,

  Defendant.

No. 3:20-cv-05374-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on three motions: (1) Plaintiff's Motion for Partial Summary Judgment, Dkt. 22; (2) Defendant XL Insurance America, Inc.'s Motion for Summary Judgment, Dkt. # 24; and (3) Defendant Travelers Property Casualty Company of America's Cross Motion for Summary Judgment, Dkt. # 31. The Court has considered the parties' pleadings, record, and relevant law, and hereby **DENIES** Plaintiff's motion for partial summary judgment, Dkt. # 22, and **GRANTS** Defendants' motions for summary judgment, Dkt. ## 24, 31.

ORDER – 1

## II.     BACKGROUND

On November 20, 2005, Dominick Maldonado entered the Tacoma Mall carrying concealed weapons. Dkt. # 1-2 ¶ 42. Shortly after entering, Maldonado opened fire and shot Brendan McKown several times. *Id.* ¶¶ 45-46. McKown suffered significant injuries. *Id.*

Three years later, McKown filed a complaint against Simon Property Group, Inc. ("Simon"), the owner of the Tacoma Mall, and IPC International Corporation ("IPC"), Simon's contracted security services provider, alleging negligence and seeking compensation for the injuries suffered as a result of the shooting. *Id.* ¶¶ 34-35, 47. The lawsuit, *McKown v. Simon Property Group, Inc. d/b/a Tacoma Mall et al.*, Case No. 3:08-cv-05754 ("*McKown* lawsuit"), was removed to the U.S. District Court for the Western District of Washington at Tacoma. *Id.* ¶ 47; Dkt. # 22 at 5.

At the time of the shooting, IPC had insurance policies with Plaintiff Illinois National Insurance Company ("Plaintiff") in effect. Dkt. # 1-2 ¶¶ 38-39. Plaintiff had issued IPC a Commercial General Liability Policy with a $1,000,000 retained limit and a $1,000,000 each occurrence limit. *Id.* ¶ 38. Plaintiff also issued IPC a Prime Commercial Umbrella Liability Policy providing for $9,000,000 per occurrence limits for bodily injuries. *Id.* ¶ 39. As IPC's insurance provider, Plaintiff provided coverage and a defense on behalf of Simon under a reservation of rights in the *McKown* lawsuit. *Id.* ¶ 48.

The district court in *McKown* initially granted summary judgment in favor of defendants Simon and IPC after concluding that the shooting was not reasonably foreseeable and that IPC owed no duty of care to McKown. Dkt. # 25-6 at 3-4. McKown appealed. *Id.* at 2. The Ninth Circuit certified three questions to the Supreme Court of Washington. *Id.* Upon receiving the response, the Ninth Circuit vacated in part, reversed in part, and remanded. *Id.* As relevant here, the Court reversed the district court's grant of summary judgment to IPC on the grounds that it owed no duty of care to McKown

ORDER – 2

where McKown failed to show that his status as a business invitee of Simon created a "special relationship" between IPC and McKown. *Id.* at 4.  The Court held that the district court erred in applying this test because "[i]n Washington, when a security company contracts with a landowner to provide security services on the owner's property, and the security company acts on behalf of the owner to provide those services, the security company may be subject to the same liability for the physical harm caused by others as though the security company were the owner." *Id.*  The Court noted that McKown had submitted the Security Services Contract as evidence that IPC agreed to provide security services and equipment at the mall. *Id.*  The Court concluded that IPC "may owe a duty to McKown that derives from its 'acting on behalf of' Simon." *Id.*

On remand, the district court granted in part and denied in part Simon and IPC's motion for summary judgment, in which they argued that they did not owe McKown a duty to protect him from the shooter's criminal acts.  Dkt. # 25-7 at 1, 6.  The district court concluded that Simon owed McKown "a duty to use ordinary care to protect him from active shooters" and denied Defendants' motions with respect to that issue. *Id.* at 10.  The court then concluded that the duties of Simon and IPC "are coextensive" and thus declined to consider IPC's duty separately from Simon's. *Id.*

Three weeks later, on September 8, 2018, an attorney with Simon wrote a letter to Plaintiff demanding that it "authorize its full $10 million policy limits to settle" the lawsuit.  Dkt. # 22 at 8.  The attorney alleged that Plaintiff's "conduct at the mediation was in bad faith" and stated that Simon "will look to [Plaintiff] to pay any judgment in excess of [Plaintiff's] policy limits." *Id.*  On September 14, 2018, the parties settled after Plaintiff offered $10 million, its policies' limits, on behalf of IPC, its named insured, and Simon, as an additional insured.  Dkt. # 22 at 9; Dkt. # 1 at 3.

On September 30, 2019, Plaintiff filed suit in the Superior Court of Washington in Pierce County against Travelers Property Casualty Company of America ("Travelers")

ORDER – 3

and XL Insurance America, Inc. ("XL")[1] (collectively, "Defendants").  Dkt. # 1 at 2. Plaintiff alleged that McKown's injuries fell outside the scope of security services provided by IPC under the Security Services Contract. *Id.* ¶ 50.  Plaintiff contends that Simon's insurers, Travelers and XL, were obligated to contribute or pay indemnification on behalf of Simon but failed to do so. *Id.* ¶¶ 53-54.  Plaintiff filed breach of contract, equitable contribution, equitable subrogation, and conventional subrogation claims, and sought declaratory judgment requiring Defendants to contribute to Plaintiff for indemnity payments owed by Simon that were paid by Plaintiff. *Id.* ¶¶ 55-105.  Travelers, with the consent of XL, removed the case to this court. *Id.*

On December 10, 2020, Plaintiff filed a motion for partial summary judgment. Dkt. # 22.  The same day, XL filed a motion for summary judgment.  Dkt. # 24.  A month later, Travelers filed a response and cross-motion for summary judgment.  Dkt. # 31.  The primary question at issue in each motion is which insurance company is responsible for the $10 million settlement that was funded by Plaintiff.

### III.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

---

[1] Plaintiff filed suit against several other insurance companies in the state court claim. Dkt. # 1 at 2.  All defendants except Travelers and XL Insurance were dismissed by the Pierce County Superior Court. *Id.*  Travelers and XL Insurance are the only defendants before this Court.

ORDER – 4

the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the nonmoving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). The court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining that the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis original).

### IV.   DISCUSSION

As a preliminary matter, the Court must determine which state law applies to the matter. Plaintiff asserts that Indiana law governs the interpretation of the Security Services Contract because the contract "expressly provides that it was made under and governed by Indiana law." Dkt. # 10 at 22. XL argues that Washington law governs here because Plaintiff has failed to show a conflict of laws. Dkt. # 29 at 8.

"When the laws of more than one state potentially apply, a federal district court sitting in diversity applies choice of law rules from the forum state." *MKB Constructors*

ORDER – 5

*v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 832 (W.D. Wash. 2014).  Under Washington law, a court must first determine whether there is an actual conflict of laws.  *Erwin v. Cotter Health Centers*, 167 P.3d 1112, 1120 (Wash. 2007).  If there is no conflict, it is a "false" conflict case, and "the presumptive local law is applied." *Id.*  The burden to show that an actual conflict exists falls on the party seeking to apply foreign law in place of the forum state law.  *Bayley Constr. v. Wausau Bus. Ins. Co.*, No. C12-1176-RSM, 2012 WL 12874163, at *3 (W.D. Wash. Dec. 19, 2012).  Here, Plaintiff asserts that Indiana law applies, but fails to demonstrate an actual conflict between Indiana law and Washington law.  The Court hereby applies Washington law to the matter at hand.

In its motion for partial summary judgment, Plaintiff seeks declaratory judgment that Defendants, as Simon's insurers, were legally obligated to reimburse Plaintiff for the portion of the settlement that was attributable to Simon's negligence.  Dkt. # 22 at 2.  Specifically, Plaintiff seeks declaratory judgment that (1) Plaintiff's contract with Simon did not require the indemnification of Simon for its own negligence or any damages not resulting from the security services provided by IPC; (2) Plaintiff had no obligation to defend or indemnify Simon for Simon's own negligence; (3) Travelers and XL policies cover Simon's liability and IPC's right to indemnification against Simon for Simon's own negligence; (4) Simon's communications with XL constituted tender and triggered XL's indemnity obligation; (5) the self-insured retention provisions of the Travelers and XL policies were satisfied by Plaintiff's indemnity payment of the *McKown* settlement.  *Id.* at 3.

On the same day, XL filed a motion for summary judgment on all of Plaintiff's claims.  Dkt. # 24.  XL argues that Plaintiff's claims fail because Simon failed to tender the *McKown* claims to XL and Plaintiff's coverage was primary to XL's coverage.  *Id.* at 2.  XL asserts that, under the Security Services Contract, IPC agreed to (1) defend and indemnify Simon; (2) name Simon as an additional insured and ensure that IPC's insurance was primary to Simon's other insurance policies; (3) waive any rights of

ORDER – 6

recovery from Simon; and (4) obtain subrogation waivers from Simon's insurers. *Id.* at 1.

Travelers responded to Plaintiff's motion and filed a cross-motion for summary judgment on all of Plaintiff's claims as well. Dkt. # 31. Like XL, Travelers argues that Plaintiff's claims fail due to the lack of affirmative tender to Travelers and because Plaintiff's policies are primary to Travelers' policy. *Id.* at 2. Travelers also argues that Plaintiff waived its subrogation rights and that the Travelers policy was never triggered. *Id.* Travelers further contends that the claim of Simon's "sole negligence" has already been defeated by the *McKown* court. *Id.* at 3. And, finally, Travelers asserts that Plaintiff's claims are barred because its payments were made voluntarily. *Id.* at 3. The Court will first consider the Defendants' overlapping arguments for summary judgment.

**A. Tender**

The issue of tender is raised in all three motions for summary judgment. Dkt. ## 22, 24, and 31. Because there is no dispute of facts, the Court may rule as a matter of law.

Defendants both seek summary judgment on Plaintiff's equitable contribution claim, arguing that Plaintiff's alleged failure to tender any claims in the *McKown* suit to either XL or Travelers are fatal to such a claim. Dkt. # 31 at 14-15; Dkt. # 24 at 8-10. Plaintiff seeks summary judgment against XL's and Traveler's defense that Simon did not tender. Dkt. # 22 at 15. Plaintiff first claims that Travelers conceded the issue of whether Simon tendered to it in its answer to the complaint. *Id.* at 2. Plaintiff next claims that it satisfied the requirements of "tender" with respect to XL, pursuant to the XL policy, which requires only notice of a claim. *Id.* Plaintiff contends that, through a series of communications, Plaintiff notified XL of the status of the *McKown* lawsuit with all details required for notice under XL's policy. *Id.* at 16.

XL does not dispute the fact that it received notice of the lawsuit from Simon. Dkt. # 24 at 6-7. Indeed, XL summarized the four communications it received from

ORDER – 7

Simon's broker with information about the lawsuit on June 20, 2016, August 27, 2018, September 9, 2018, and September 11, 2018. *Id.* XL does, however, dispute whether such notice constitutes "tender" under Washington law. Dkt. # 29 at 15. Travelers similarly concedes that Simon provided notice of the *McKown* suit but claims that it was for "informational purposes only" and did not constitute "tender." Dkt. # 31 at 8. Travelers also argues that its initial concession that the claims had been tendered to it in its answer to the complaint is not dispositive because it was made in error and is unsupported by any evidence in the record. Dkt. # 46 at 7.

In deciding whether an insurer is liable to another insurer for an equitable contribution under Washington law, a court must consider whether the non-participating co-insurer had a legal obligation to provide a defense or indemnity coverage for the claim before the date of settlement. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008). An insurer's duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 873 (citing *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999), *as amended* (Apr. 24, 2000). However, Washington courts distinguish between a duty to defend and a legal obligation to defend or indemnify. In *Mutual of Enumclaw*, the Supreme Court of Washington, sitting *en banc*, articulates this legal distinction accordingly:

> [A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired. Thus, breach of the duty to defend cannot occur before tender. The duties to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity is tendered. Further, the insurer who seeks contribution does not sit in the place of the insured and cannot tender a claim to the other insurer. Thus, if the insured has not tendered a claim to an insurer prior to settlement or the end of trial, other insurers cannot recover in equitable contribution against that insurer.

191 P.3d at 873 (internal quotations and citations omitted).

ORDER – 8

The Court finds that Plaintiff's definition of "tender" as a flexible concept that varies from one insurance policy to the next is inconsistent with Washington case law. Mere notice of a claim is insufficient to establish tender, whereby an insured must affirmatively inform the insurer that its participation is desired.[2] *Id.* In the absence of any request for participation in the *McKown* lawsuit, Plaintiff's notice to XL and Travelers does not constitute tender. Because Simon did not tender the *McKown* claims to XL or Travelers prior to the settlement, Plaintiff cannot recover in equitable contribution against XL or Travelers.

The Court also finds that Plaintiff's contention that Travelers' admission in its answer to the complaint that Plaintiff had tendered the claim eliminates any question on the matter is unpersuasive. As Travelers notes, "the actual communications from Simon established that Simon never requested Traveler's participation." Dkt. # 47 at 7. Travelers maintains that the communications are "the only actual evidence before the court and form[] a sufficient basis upon which to grant summary judgment." *Id.* The Court agrees. None of the evidence presented by the parties regarding tender is in dispute; the Court is left only to decide whether the notice provided by Plaintiff constitutes "tender" as a matter of law. The Court concludes it does not. Plaintiff's equitable contribution claim, therefore, fails as a matter of law.

**B. Simon's Primary Insurance Policy**

Plaintiff seeks declaratory judgment that Simon's insurers—XL and Travelers—had a legal obligation to insure Simon for its own negligence and "bear some, if not all, responsibility for the $10 million [settlement]." Dkt. # 22 at 2. Under the Security Services Contract, Plaintiff argues, any acts or omissions committed by Simon that did

---

[2] Plaintiff errs in its reliance on this Court's Order in *Axis Surplus Ins. Co. v. James River Ins. Co.*, 635 F. Supp. 2d 1214 (W.D. Wash. 2009) for Plaintiff's argument that "tender" requires only notice of a claim. The Court's Order in *Axis Surplus* addresses a subrogation claim, not an equitable contribution claim and is inapplicable here. 635 F. Supp. At 1220.

ORDER – 9

not relate to both "the security of the Property *and* those services to be provided by the Contractor pursuant to this Agreement" did not fall under IPC's indemnification requirements pursuant to the Security Services Contract. *Id.* (citing the Security Services Contract, Dkt. # 23-1). Plaintiff admits that IPC was required to "respond to and provide assistance in security related situations such as fires, accidents, internal disorders and attempts of sabotage or other criminal acts, in conformance with common sense and good judgment and in keeping with Simon's policies and procedures." *Id.* Plaintiff contends, however, that IPC was not obligated to provide armed security services or install or maintain public announcement or video monitoring systems in the mall. *Id.* These responsibilities were Simon's alone, and any failure to meet them could not be attributed to IPC, according to Plaintiff. *Id.*

XL and Travelers both argue that the terms of the Security Services Contract and Plaintiff's insurance policies establish that Plaintiff's coverage was primary to XL's and Travelers. Dkt. # 24 at 10-14; Dkt. # 31 at 20-23. As an additional insured under the IPC if its liability "arose out of" IPC's provision of security services, Simon was covered by IPC's insurance with respect to the McKown shooting. Dkt. # 24 at 11. Defendants also argue that any attempt to hold them liable for Simon's "sole negligence" is contrary to the Ninth Circuit and prior district court rulings on this matter. Dkt. # 24 at 12; Dkt. # 31 at 19.

The Court first addresses the prior decisions on this matter. As previously discussed, the Ninth Circuit, considering liability with respect to Mr. McKown and IPC, concluded that "[i]n Washington, when a security company contracts with a landowner to provide security services on the owner's property, and the security company acts on behalf of the owner to provide those services, the security company may be subject to the same liability for the physical harm caused by others as though the security company were the owner." Dkt. # 25, Ex. 6. Based on evidence that Simon and IPC had a Security Services Contract under which IPC agreed to provide security services and

ORDER – 10

equipment at the mall, the Court held that "IPC may owe a duty to McKown that derives from its 'acting on behalf of' Simon." *Id.*

This finding that IPC "may owe a duty" did not explicitly hold IPC liable for Simon's actions or omissions. On remand, however, the district court did just that: the court held that IPC's duty was "coextensive" with Simon's duty. *McKown v. Simon Prop. Grp., Inc.*, No. C08-5754 BHS, 2018 WL 3971960, at *4 (W.D. Wash. Aug. 20, 2018). Because their duties are coextensive, Simon's alleged negligence is attributable to IPC, acting on behalf of Simon. Thus, a breach of duty by Simon would be a breach of duty by IPC. Plaintiff's effort here to distinguish Simon's negligence from IPC's does not comport with the district court's ruling.

Moreover, the Court's own review of the Security Services Contract does not lead to a different outcome. Under Washington law, "[c]onstruction of an insurance policy is a question of law." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 712 (Wash. 1994), *as amended* (Sept. 29, 1994), *as clarified on denial of reconsideration* (Mar. 22, 1995). Under the Security Services Agreement, IPC's services include responding to any "indications of suspicious activities" or "suspicious incidents," as well as responding to and providing assistance "in security related situations," such as internal disorders and criminal acts. Dkt. # 25-3 at 10, Addendum A. Simon was named as an "additional primary insured" under IPC's insurance. Dkt. # 23-1 ¶ 9

With respect to indemnification, IPC and Plaintiff stated their "express intention" accordingly:

> It is the express intention of the parties that Contractor shall defend, indemnify and save harmless Owner, Owner's Managing Agent, and Owner's beneficiary from and against all third-party claims relating to, or arising out of, the security of the Property, and that Owner shall defend, indemnify and save harmless Contractor from and against all third-party claims which do not relate to the security of the Property.

*Id.* ¶10.

ORDER – 11

The Security Services Contract elaborated on what might constitute a third-party claim for which IPC would indemnify Simon:

> By way of example only, and not in limitation, claims relating to security include claims alleging inadequate security staffing, negligent or intentional acts or omissions of security personnel or security management, false imprisonment, false arrest, *failure to warn of or prevent injuries potentially or actually caused by the criminal acts of third parties*, excessive use of force, and claims for injuries or damages caused by security vehicles owned and/or operated by Contractor.

*Id.* (emphasis added).

Despite these provisions, Plaintiff argues that it is not contractually liable for the McKown shooting because it did not "aris[e] out of" or was "in any way related to, the security of the Property *and* those services to be provided by the Contractor pursuant to this Agreement." Dkt. # 22 at 2 (citing Dkt. # 23-1 ¶ 10). This is simply untenable. Plaintiff's argument that IPC's services were not implicated in any way by this particular security incident is contrary to the expressed intent of the contract, which provides that IPC broadly indemnify Simon for all claims that arise out of or relate to the security of the property. Plaintiff's emphasis on the conjunction "and" as limiting indemnification is inconsistent with the other provisions. The plain language of the contract is properly interpreted as requiring Plaintiff to defend and indemnify Simon for claims arising out of or in any way related to the security of the Property and to defend and indemnify Simon for claims arising out of and in any way related to those services to be provided by the IPC. The Court therefore rejects Plaintiff's attempt to distinguish IPC's liability as a security services provider acting on behalf of Simon from Simon's own liability. Consistent with the prior rulings on this matter, the Court concludes that Simon's duty and IPC's duty are indistinguishable and cannot be separated for purposes of recovery at issue here.

The Court also concludes that Plaintiff's insurance policies with IPC, which include Simon as an additional insured, are primary to Simon's insurance policies.

ORDER – 12

"Primary insurance" is defined as "[i]nsurance that attaches immediately on the happening of a loss." *Diaz v. Nat'l Car Rental Sys., Inc.*, 17 P.3d 603, 605 (Wash. 2001) (quoting BLACK'S LAW DICTIONARY 807 (7th ed. 1999). When multiple insurance policies may apply to a loss, a court must "consider them in light of the total insuring intent of all the parties." *Safeco Ins. Co. of Illinois v. Auto. Club Ins. Co.*, 31 P.3d 52, 57 (Wash. Ct. App. 2001).

In naming Simon as an "additional primary insured," the Security Services Contract explicitly provided that "[a]ll coverages required herein shall . . . be primary to any insurance policies maintained by [Simon], its Managing agent, their affiliates or other additional insureds." Dkt. # 25-3 ¶ 9. The contract also provided that IPC "agrees to look solely to its insurers, and does hereby release and waive any and all rights it has now, or may in the future have, to recover against [Simon]." *Id.* ¶ 11. These provisions demonstrate the parties' intent that Plaintiff's insurance policies were primary to Simon's other insurance policies with respect to claims regarding a security-related matter.

Plaintiff's insurance policies further support this. Indeed, IPC purchased insurance from Plaintiff under which it waived its subrogation rights against others. In its Commercial General Liability Policy, Plaintiff waived its rights accordingly:

SCHEDULE

Name of Person or Organization:
ANY PERSON OR ORGANIZATION REQUIRING A WAIVER OF TRANSFER OF RIGHTS OF RECOVERY PURSUANT TO THE TERMS OF ANY CONTRACT OR AGREEMENT YOU ENTER INTO WITH SUCH PERSON OR ORGANIZATION.

. . . .

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

ORDER – 13

Dkt. # 24-5 at 42.

Under Plaintiff's umbrella policy, Plaintiff also waives its subrogation rights when IPC is required to do so in another insurer's agreement.

> If, prior to the time of an Occurrence, you and the insurer of Scheduled Underlying Insurance waive any right of recovery against a specific person or organization for injury or damage as required under an Insured Contract, we will also waive any rights we may have against such person or organization.

Dkt. # 25-5 at 22.

Because the Security Services Contract requires IPC to waive its subrogation rights with respect to Simon, *see* Dkt. # 25-3 ¶ 11, Plaintiff's subrogation waivers also go into effect, Dkt. # 24-5 at 42, Dkt. # 25-5 at 22. The Court concludes, therefore, that Plaintiff has waived its subrogation rights. The Court also concludes that Plaintiff's breach of contract claim fails. Because Plaintiff's insurance policies were primary to Simon's insurance policies and because the settlement amount of $10 million fell within the limits of Plaintiff's commercial general liability insurance and umbrella policy, Simon's insurers did not breach their insurance policies to provide any contribution to defense or indemnification. Based on the foregoing analysis, Plaintiff's claims of breach of contract, equitable contribution, equitable subrogation, and conventional subrogation claims fail as a matter of law.

## V.     CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion for partial summary judgment, Dkt. # 22, and **GRANTS** Defendants' motions for summary judgment, Dkt. ## 24, 31.

DATED this 30th day of September, 2021.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 14